## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SAWTANTER SINGH DHALIWAL, #15749,    \*
        Petitioner

                    \*

    v.                         CIVIL ACTION NO. PJM-05-860

                    \*

UNITED STATES DEPARTMENT OF
   HOMELAND SECURITY, BUREAU OF    \*
   IMMIGRATION AND CUSTOMS
   ENFORCEMENT,               \*
        Respondent

                    \*\*\*\*\*\*

## MEMORANDUM OPINION

Sawtanter Singh Dhaliwal is being held in Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") custody at the Dorchester County Detention Center in Cambridge, Maryland awaiting deportation.  On March 28, 2005, he filed this 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus claiming that his continued ICE detention violates the dictates of *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Respondent[1] has filed a Response and Motion to Substitute Respondent. Paper No. 3.  Petitioner has filed a Reply.  Paper No. 4.  No oral argument is necessary because the parties have fully briefed the issues.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Court will, by separate Order, dismiss the Petition for Writ of Habeas Corpus.

---

[1]     The Clerk shall be directed to substitute Steven R. Williams, Warden Dorchester County Dentention Center as Respondent. *Rumsfeld v. Padilla*, 524 U.S. ___, 124 S.Ct. 2711, 2004 WL 1432135 (June 28, 2004) (the proper Respondent to a "pure detention" Petition for Writ of Habeas Corpus by a detained alien is the warden of the detention facility where the alien is detained.)

I. Background

Petitioner previously petitioned this Court for a writ of habeas corpus. *Dhaliwal v. Crocetti*, Civil Action No. PJM-01-1115 (D. Md. 2001). In dismissing the petition, this Court found that Plaintiff is a native and citizen of India. He was admitted to the United States in 1992 as a nonimmigrant visitor for pleasure. In March of 1998, Petitioner was convicted in the Supreme Court of the State of New York, County of Queens, of criminal possession of a weapon in the third degree and attempted robbery in the second degree. Paper No. 3, Ex. A. Petitioner was sentenced to a minimum of one and one half years and a maximum of three years confinement for each offense.

While Petitioner was incarcerated, INS issued and served Petitioner with a Notice to Appear charging him as being inadmissable as: (1) an immigrant not in possession of a valid entry document; (2) an alien convicted of a crime involving moral turpitude; and (3) an alien convicted of two or more offenses for which the aggregate sentences imposed were five years or more. *Id.* On October 27, 1998, Petitioner was ordered removed to Canada with an alternate order of removal to India. Petitioner did not appeal this decision.

On January 18, 2000, INS requested travel documents for Petitioner from the Consulate General of India. INS also indicated at that time that Canada had notified the U.S. Government that Petitioner was not returnable to Canada. *Id.*

Petitioner was released from New York state custody to ICE custody on January 27, 2000. INS made a second request for travel documents form the Embassy of India on February 8, 2000. *Id.* Subsequently INS made a determination to release Petitioner from custody upon a posting of a $5,000.00 bond. *Id.* Petitioner posted bond and was released.

2

On September 24, 2004, Petitioner was retaken into custody by ICE. *Id*., Ex. B. Petitioner admitted that he was required to report to the New York Deportation and Removal Office under a monthly order of supervision as a condition of his release on bond, but he failed to report. *Id*. ICE issued a Notice of Revocation of Release on October 8, 2004, advising Petitioner that his release had been revoked due to his failure to report as directed and for engaging in criminal activity while released on an ICE Order of Supervision. *Id*., Ex. C.

Thereafter, ICE attempted to effect Petitioner's removal. Respondent contends that Petitioner has failed to cooperate in the obtaining of travel documents by incompletely filling out applications for travel documents and by providing conflicting and inaccurate information. *Id*., Ex. D. Specifically, Respondent states that Petitioner has failed to provide any documents as to his identity such as a passport or a birth certificate, and has failed to provide any details about his entry and family status. Paper No. 3, Ex. D and E. Respondent also points to several instances where Petitioner omitted answers to questions on the application for an Indian passport. The application was so lacking that the Government of India would not issue a travel document and the form was returned for Petitioner to complete more fully. Petitioner again completed the form. He again failed to provide all of the information requested, and this time provided information that conflicted with the first application. *Id*., Ex. D, F. G.

On April 14, 2005, Petitioner was served with written notification that because he failed to make good faith efforts to obtain a travel document, and had therefore acted to prevent his removal, his removal period had been extended and he would remain in ICE custody. *Id.*, Ex. I.

Petitioner states that his application for an Indian passport was incomplete and inconsistent because he is not certain of the town in India where he was born. Paper No. 4. He states that he was raised as a

3

foster child and entered the United States when he was fifteen.  He further states that his mother is unknown

to him and his father died when he was thirteen.  *Id*.  He states that he made every effort to complete the

passport application and that he has fully complied with requests by Respondent to complete applications,

submit to finger printing, the taking of photographs, etc., in an effort to aid in his removal. *Id.*

## II. Analysis

The  law  dealing  with  the  detention  of  deportable  aliens  is  found  in  8  U.S.C.  §  1231,  which  is

supplemented by various subsections of 8 C.F.R. § 241.  Under § 1231, when deportation of an alien is

ordered and that alien has been convicted of aggravated felonies, controlled substance offenses, firearms

offenses, or other serious crimes, the Attorney General is to keep the alien in custody if the incarceration

for the crime has ended and the alien cannot be immediately removed.  *See* 8 U.S.C. § 1231.  DHS is

expected to remove the alien within 90 days following the entry of a final order or removal. 8 U.S.C. §

1231(a).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that post-removal order

detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about

the alien's removal from the United States and does not permit indefinite detention.  In sum, the Supreme

Court found that after a order of deportation became final, an alien may be held for a six month period.

After this period:

> [o]nce the alien provides good reason to believe that there is no significant likelihood of
> removal in the reasonably foreseeable future, the Government must respond with evidence
> sufficient to rebut that showing. And for detention to remain reasonable, as the period of
> prior post-removal confinement grows, what counts as the 'reasonably foreseeable future'
> conversely would have to shrink.  This 6-month presumption, of course, does not mean
> that every alien not removed must be released after six months. To the contrary, an alien
> may be held in confinement until it has been determined that there is no significant likelihood
> of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701.

Petitioner was retaken into ICE custody on September 24, 2004.  Paper No. 3, Ex.  Accordingly, the *Zadvydas* presumptively reasonable six-month period would have expired on March 24. 2004.  The post order 90 day removal period, and the *Zadvydas* six month presumptively reasonable detention period, are suspended where an "alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent he alien's removal subject to an order of removal."  Section 241(a)(1)(C) of the INA, 8 U.S.C. § 1231(a)(1)(C); *see also* 8 C.F.R. §§ 341.4(g)(5)(i)-(iv).

Respondents point to several omissions and inconsistencies in Petitioner's application for an Indian passport.  Principally, they note that Petitioner has no identity documents and has indicated that he had no ability to obtain identity documents.  Paper No. 3.  Petitioner entered the United States in 1992 at the age of 15.  He has remained in the United States since that time.  There is no evidence before the Court that would indicate that Petitioner's statements that he has no identity documents and is not able to obtain same are false.  Respondents do not indicate how, other than applying for the Indian passport, Petitioner would be able to obtain identify documents.

The Court agrees, however, that Petitioner's applications for the Indian passport have been incomplete and inconsistent.  On the first application for Indian passport, Petitioner stated that he was born in New Delhi, India and that he was a naturalized Indian citizen.  He did not answer questions regarding his marital status, profession, business address, present emigration status, permanent address in India, and name of his eldest sibling and eldest child.  *Id.*, Ex. F.  On the second application for Indian passport, Petitioner stated that he was born in Punjab, India and that he is a citizen of India by birth.  He again did not answer questions regarding his profession, marital status, immigration status, name of his eldest child or sibling, or possession of travel documents from other countries.  *Id.* Ex. H.

Petitioner states that he was raised in foster care, that is mother is unknown to him, and that his father is deceased.  He claims therefore that much of the information requested on the application is beyond his knowledge.  This may or may not be true: however Petitioner's lack of knowledge regarding his familial background would not prevent him from answering most of the questions on the application, including but not limited to questions concerning  his marital status, profession, business address, when he first left India, the date he was last in India, how long he has been abroad, his present immigration status, and the name of his eldest child.  The answers to these questions are clearly within Petitioner's knowledge.  Petitioner has failed to complete, in good faith,  the application for an Indian passport.  Accordingly,  the *Zadvydas* six month presumptively reasonable detention period has been tolled.  INA § 241(a)(1)(C), 8 U.S.C. 1231(a)(1)(C); *see also Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003).  Until such time as Petitioner completes the application for passport in good faith, providing all of the information reasonably within his knowledge,  he cannot sustain his burden that there is no significant likelihood of removal in the reasonably foreseeable future.  In sum, Petitioner is precluded from making a *Zadvydas* issue of his continued post-removal-order detention when he is, for all intents and purposes, the controlling timekeeper.  *Abdel-Muhti v. Ashcroft*, 314 F.Supp.2d 418, 427-28 (M.D.  Pa. 2004); *Powell v. Ashcroft*, 194 F.Supp.2d 209, 210-11 (E.D. N.Y. 2002).  Accordingly, the Court finds no constitutional or statutory violation in Petitioner's detention at this time.[2]

---

[2]        Petitioner may re-file a petition should be remain in post-final-order detention after he has completed, in good faith, the application for an Indian passport, if a passport is not forthcoming from India.

III. Conclusion

In light of the foregoing the Petition for Habeas Corpus relief shall be dismissed.  A separate Order

follows.


____6/9/05_____                          _____/s/_____
     Date                                     PETER J. MESSITTE
                                         UNITED STATES DISTRICT JUDGE